FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2018 JUN 21   A II: 12

WILLIAM W. BLEVINS
CLERK



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

### SUPERSEDING INDICTMENT FOR CONSPIRACY TO COMMIT MAIL AND WIRE FRAUD, WIRE FRAUD, MAIL FRAUD, CONSPIRACY TO COMMIT MONEY LAUNDERING, MONEY LAUNDERING, OBSTRUCTION OF JUSTICE, AND NOTICE OF FORFEITURE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.: 17-241 |
| v. | * | SECTION: "A" |
| IRVIN MAYFIELD | * | VIOLATIONS: 18 U.S.C. § 371 |
| RONALD MARKHAM | | 18 U.S.C. § 1341 |
| | * | 18 U.S.C. § 1343 |
| | | 18 U.S.C. § 1519 |
| | * | 18 U.S.C. § 1956(h) |
| | | 18 U.S.C. § 1957 |
| | * | 18 U.S.C. § 2 |

\* \* \*

The Grand Jury charges that:

### COUNT 1
### (Conspiracy)

**A.     AT ALL TIMES MATERIAL HEREIN:**

**The New Orleans Jazz Orchestra**

1.     Defendant, **IRVIN MAYFIELD (MAYFIELD)**, founded the New Orleans Jazz

Orchestra (NOJO) in 2002. **MAYFIELD** also acted as Artistic Director and featured performer.

Fee_____
Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No._____

2.      Defendant, **RONALD MARKHAM (MARKHAM)**, was a long-time friend of **MAYFIELD** and served as NOJO's President and Chief Executive Officer.

3.      NOJO was composed of approximately 18 musicians who routinely performed and toured. NOJO also employed administrative staff, including personal assistants for **MAYFIELD**. In addition to performance fees, travel expenses, and personal assistants, **MAYFIELD** received a salary from NOJO of approximately $100,000 per year. **MAYFIELD** also received income and other benefits through his companies Mayfield Production Company, Inc. (Mayfield Production) and Mayfield Publishing Co., as well as through his affiliation with Irvin Mayfield's Jazz Playhouse, a nightclub located in the French Quarter.

4.      For his position as President and Chief Executive Officer of NOJO, **MARKHAM** received a salary of approximately $100,000 per year. **MARKHAM** also received a separate salary through Mayfield Production Company, Inc. and Mayfield Publishing Co.

5.      Throughout its existence, NOJO relied heavily on donations to fund its operations and pay its expenses. Between on or about December 16, 2008, until on or about May 31, 2010, NOJO relied heavily on grants from the Edward Wisner Donation, a charitable trust administered by the City of New Orleans.

6.      In or about February 2011, support for NOJO through the Edward Wisner Donation was terminated by the City of New Orleans, causing great financial distress to NOJO and its ability to pay expenses. **MAYFIELD** and **MARKHAM** then began a search for new sources of funding.

### The New Orleans Public Library Foundation

7.      In or about October 1990, the New Orleans Public Library Foundation (NOPLF) was established to receive donations generated through private fundraising efforts; to oversee the

prudent investment of said donations at an acceptable level of risk; and to authorize expenditures judiciously for the purpose of purchasing books, other informational materials, and sponsoring New Orleans Public Library (NOPL) related programs. For these purposes, NOPLF maintained an investment account.

8.     Until approximately August 2011, the NOPLF used interest earned from its investment account to fund its mission at the direction of its board of directors. All board members were uncompensated volunteers.

9.     In or about August 2006, **MAYFIELD** became a board member of NOPLF. He later became Chairman of the board in or about November 2010. During his time on the NOPLF board, **MAYFIELD** also maintained his position with NOJO.

10.     In or about December 2009, **MARKHAM** became a board member of NOPLF. He later became Chairman of the board in or about September 2013 upon **MAYFIELD's** resignation as Chairman of NOPLF. During his time on the NOPLF board, **MARKHAM** also maintained his position with NOJO.

11.     When Mayfield became Chairman of the NOPLF board of directors, the NOPLF investment account contained approximately $3,892,215. Between August 23, 2011, and November 30, 2013, **MAYFIELD** and **MARKHAM** caused approximately $1,316,232 to be transferred and paid directly from NOPLF to NOJO and elsewhere to unlawfully benefit themselves.

**The Youth Rescue Initiative**

12.     The Youth Rescue Initiative (YRI) was a New Orleans non-profit dedicated to creating opportunities for disenfranchised youth in the City of New Orleans.

13.     Between at least January 2012 and November 2012, **MAYFIELD** was a board member of YRI.

**B.     THE CONSPIRACY:**

14.     Beginning in or about August 2011, and continuing until in or about November 2013, in the Eastern District of Louisiana and elsewhere, the defendants, **IRVIN MAYFIELD** and **RONALD MARKHAM**, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree with each other to:

     a.     use and cause to be used a private and commercial interstate carrier in furtherance of and for the purpose of executing the scheme and artifice to defraud set forth in paragraph 51 of Counts 2 through 7; in violation of Title 18, United States Code, Section 1341; and

     b.     transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures and sounds in furtherance of and for the purpose of executing the scheme and artifice to defraud set forth in paragraph 51 of Counts 2 through 7; in violation of Title 18, United States Code, Section 1343.

**C.     MANNER AND MEANS TO ACCOMPLISH THE CONSPIRACY:**

15.     The manner and means by which **MAYFIELD**, **MARKHAM** and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

16.     **MAYFIELD** and **MARKHAM** transferred and caused to be transferred large sums of money from the NOPLF investment account to NOJO to support NOJO's operating expenses.

17.     **MAYFIELD** and **MARKHAM** transferred and caused to be transferred large sums of money from the NOPLF account to unlawfully enrich themselves.

18.     **MAYFIELD** and **MARKHAM** sent and caused to be sent materially false and misleading correspondence to NOPLF board members, investment account managers, and auditors regarding the purpose of the money transfers from the NOPLF investment account.

19.     **MAYFIELD** and **MARKHAM** made and caused to be made materially false and misleading representations to NOPLF board members, investment account managers, and auditors regarding the purpose of the money transfers from the NOPLF investment account.

20.     **MAYFIELD** and **MARKHAM** prepared and caused to be prepared materially false and misleading records to make money transfers from NOPLF to NOJO appear legitimate when they were not.

D.     **OVERT ACTS**:

21.     In furtherance of and to conceal the conspiracy and accomplish its purposes, the defendants, **MAYFIELD** and **MARKHAM**, and others known and unknown to the Grand Jury, committed at least one of the following overt acts, among others, in the Eastern District of Louisiana and elsewhere:

22.     On about August 23, 2011, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $100,000 from NOPLF to NOJO for the purpose of paying NOJO operating expenses, $10,000 to Mayfield Production, two payments of $8,333.33 to **MAYFIELD** for salary, and two payments of $6,032.54 to **MARKHAM** for salary.

23.     On about October 7, 2011, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $25,000 from NOPLF to NOJO for the purpose of paying $25,000 into a personal checking account of **MAYFIELD**.

24.     On about October 21, 2011, **MAYFIELD** and **MARKHAM** emailed and caused to be emailed materially false and misleading financial information to a NOJO board member.

25.     On about October 26, 2011, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $150,000 from NOPLF to NOJO for the purpose of paying NOJO operating expenses, $23,000 to a sculptor, two payments of $8,333.33 to **MAYFIELD** for salary, and two payments of $6,032.54 to **MARKHAM** for salary.

26.     On about December 29, 2011, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $100,000 from NOPLF to NOJO for the purpose of paying NOJO operating expenses, $5,000 to Mayfield Production, $8,333.33 to **MAYFIELD** for salary, and $6,032.54 to **MARKHAM** for salary.

27.     On about January 19, 2012, **MAYFIELD** transferred and caused to be transferred $50,000 from NOPLF to a YRI account for **MAYFIELD**.

28.     On about February 27, 2012, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $100,000 from NOPLF to NOJO for the purpose of paying NOJO operating expenses, $7,000 to Mayfield Production, $8,333.33 to **MAYFIELD** for salary, and $6,053.74 to **MARKHAM** for salary.

29.     On about April 29, 2012, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $50,000 from NOPLF to NOJO for the purpose of paying NOJO operating expenses, $8,333.33 to **MAYFIELD** for salary, and $6,053.29 to **MARKHAM** for salary.

30.     On about May 31, 2012, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $50,000 from NOPLF to NOJO for the purpose of paying NOJO operating expenses, $8,333.33 to **MAYFIELD** for salary, and $6,053.28 to **MARKHAM** for salary.

31.     On about June 19, 2012, **MAYFIELD** and **MARKHAM** created and caused to be created materially false and misleading NOJO correspondence, dated August 29, 2011.

32.     On about June 19, 2012, **MAYFIELD** and **MARKHAM** created and caused to be created materially false and misleading NOJO correspondence, dated October 11, 2011.

33.     On about June 19, 2012, **MAYFIELD** and **MARKHAM** created and caused to be created a materially false and misleading NOJO invoice, dated February 27, 2012.

34.     On about June 19, 2012, **MAYFIELD** and **MARKHAM** created and caused to be created a materially false and misleading NOJO invoice, dated May 31, 2012.

35.     In about July 2012, **MAYFIELD** and **MARKHAM** paid and caused to be paid $13,438.49 from NOPLF to Ritz Carlton New York to pay for **MAYFIELD's** stay.

36.     On about August 27, 2012, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $50,000 from NOPLF to NOJO for the purpose of paying NOJO operating expenses.

37.     On about September 11, 2012, **MAYFIELD** and **MARKHAM** made and caused to be made materially false and misleading representations to auditors, including that $375,000 in NOPLF funds was transferred to NOJO in 2011 as fiscal agent to implement the provisions of Memorandums of Understanding with YRI, University of New Orleans, and the Southern Food and Beverage Museum.

38.     On about September 18, 2012, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $16,000 from NOPLF to NOJO for the purpose of paying NOJO operating expenses, including $9,728.44 to Park Central Hotel in New York for **MAYFIELD's** stay.

39.     On about September 24, 2012, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $50,000 from NOPLF to NOJO for the purpose of paying NOJO operating expenses.

40.     On about September 27, 2012, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $150,000 from NOPLF to NOJO for the purpose of paying NOJO operating expenses, $5,000 to Mayfield Production, $13,470.13 to Park Central Hotel in New York, $38,924 to Carnegie Hall, $18,860.71 to The Ritz Carlton in New York, $8,333.33 to **MAYFIELD** for salary, and $6,053.29 to **MARKHAM** for salary.

41.     Between about November 1, 2012, and November 5, 2012, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $100,000 from NOPLF to NOJO, and $45,000 of NOPLF funds being held by YRI for **MAYFIELD** to NOJO for the purpose of paying NOJO operating expenses, $25,000 to **MAYFIELD** for his Carnegie Hall fee, an additional $20,000 to **MAYFIELD**, $8,333.33 to **MAYFIELD** for salary, and $6,053.29 to **MARKHAM** for salary.

42.     On about November 21, 2012, **MAYFIELD** transferred and caused to be transferred $100,000 from NOPLF to a YRI account for **MAYFIELD**.

43.     On about November 30, 2012, **MAYFIELD** transferred and caused to be transferred approximately $15,000 from a YRI account for **MAYFIELD** to purchase a 24k gold-plated trumpet from a trumpet manufacturer.

44.     On about December 4, 2012, **MAYFIELD** caused to be mailed a 24k gold-plated trumpet to **MAYFIELD**.

45.     On about December 5, 2012, **MAYFIELD** transferred and caused to be transferred $77,000 in NOPLF funds being held by YRI to NOJO for the purpose of paying

$66,000 to **MAYFIELD**, of which over $23,000 was spent at Saks Fifth Avenue and over $2,000 was spent at Harrah's Casino.

46.     On about January 30, 2013, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $85,000 from NOPLF to NOJO for the purpose of paying NOJO operating expenses, $8,333.33 to **MAYFIELD** for salary, and $5,904.35 to **MARKHAM** for salary.

47.     On about June 26, 2013, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $62,000 from NOPLF to NOJO for the purpose of paying NOJO operating expenses, $5,000 for NOJO's Gala expenses, $8,333.33 to **MAYFIELD** for salary, and $5,904.35 to **MARKHAM** for salary.

48.     In July 2013, **MAYFIELD** and **MARKHAM** paid and caused to be paid $12,793.48 from NOPLF to Ritz Carlton New York for **MAYFIELD's** stay.

49.     On about November 6, 2013 and November 18, 2013, **MAYFIELD** and **MARKHAM** transferred and caused to be transferred $15,000 and $50,000, respectively, from NOPLF to NOJO for the purpose of paying NOJO operating expenses, $20,000 to a booking agency for a performance in Chicago, Illinois and $5,904.36 to **MARKHAM** for salary.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 2 – 7**
**(Wire Fraud)**

**A.     AT ALL TIMES MATERIAL HEREIN:**

50.     The allegations contained in paragraphs 1 through 13 of Count 1 are realleged and incorporated by reference as if fully set forth herein.

9

**B.    THE SCHEME:**

51.    Beginning in or about August 2011 and continuing until in or about November 2013, in the Eastern District of Louisiana and elsewhere, the defendants, **IRVIN MAYFIELD** and **RONALD MARKHAM,** and others known and unknown to the Grand Jury, did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by transferring money from the NOPLF investment account to unlawfully enrich themselves and pay the operating expenses of NOJO without approval and while misleading the NOPLF and others with regard to the purpose of the transfers.

**C.    MANNER AND MEANS:**

52.    The allegations contained in paragraphs 15 through 20 of Count 1 are realleged and incorporated by reference as if fully set forth herein.

**D.    THE EXECUTIONS:**

53.    On or about the dates specified in each count below, in the Eastern District of Louisiana and elsewhere, the defendants, **MAYFIELD** and **MARKHAM,** and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the scheme and artifice to defraud set forth in paragraph 51 of these counts, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described below:

| Count | Date | Description of Wire Communication |
|-------|------|-----------------------------------|
| 2 | 11/01/12 | A wire transfer of $100,000 between Texas, New Jersey, and Louisiana. |
| 3 | 11/21/12 | A wire transfer of $100,000 between Texas, New Jersey, and Louisiana. |
| 4 | 11/28/12 | An email between Louisiana and Portland, Oregon regarding the purchase of a 24k gold-plated trumpet. |
| 5 | 01/30/13 | A wire transfer of $85,000 between Texas, New Jersey, and Louisiana. |
| 6 | 06/26/2013 | A wire transfer of $62,000 between Texas, New Jersey, and Louisiana. |
| 7 | 11/18/2013 | A wire transfer of $50,000 between Texas, New Jersey, and Louisiana. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 8
### (Mail Fraud)

**A.     AT ALL TIMES MATERIAL HEREIN:**

54.     The allegations contained in paragraphs 1 through 13 of Count 1 are realleged and incorporated by reference as if fully set forth herein.

**B.     MANNER AND MEANS:**

55.     The allegations contained in paragraphs 15 through 20 of Count 1 are realleged and incorporated by reference as if fully set forth herein.

**C.     THE SCHEME AND EXECUTION:**

56.     On or about December 4, 2012, in the Eastern District of Louisiana and elsewhere, the defendant, **MAYFIELD**, and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute, and in furtherance of, the scheme and artifice to defraud set forth in paragraph 51 of Counts 2 through 7 above, did knowingly send and cause to be sent, delivered, and moved by private and commercial interstate carriers a 24k gold-plated trumpet.

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT 9
### (Money Laundering Conspiracy)

**A.     AT ALL TIMES MATERIAL HEREIN:**

57.     The allegations contained in paragraphs 1 through 13 of Count 1 are realleged and incorporated by reference as though fully set forth herein.

**B.    THE CONSPIRACY:**

58.    Beginning at a date unknown to the Grand Jury, but at least in about August 2011, and continuing until in about November 2013, in the Eastern District of Louisiana and elsewhere, the defendants, **MAYFIELD** and **MARKHAM**, together with others, both known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, and agree to commit offenses against the United States in violation of Title 18, United States Code, Section 1957, to wit: to knowingly engage and attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, to wit: mail fraud, in violation of Title 18, United States Code, Section 1341 and wire fraud, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS 10 – 22
### (Money Laundering)

**A.    AT ALL TIMES MATERIAL HEREIN:**

59.    The allegations contained in paragraphs 1 through 13 of Count 1 are realleged and incorporated by reference as though fully set forth herein.

**B.    THE OFFENSE OF MONEY LAUNDERING:**

60.    On or about the dates set forth below, in the Eastern District of Louisiana and elsewhere, the defendants, **MAYFIELD** and **MARKHAM**, did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the transactions listed below, such property having been derived from a specified

12

unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341

and wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Date | Monetary Transaction |
|-------|------|---------------------|
| 10 | 11/01/12 | An electronic bank transfer in the amount of $45,000 from NOJO Capital One General Operating Acct. No. ***5472 to NOJO Capital One Payroll Acct. No. ***2489. |
| 11 | 11/05/12 | The deposit of Whitney cashier's check No. 11001365, made payable to NOJO in the amount of $45,000 and purchased from YRI Whitney Acct. No. ***8576, into NOJO Capital One General Operating Acct. No. ***5472. |
| 12 | 11/05/12 | The deposit of check No. 1050, made payable to **MAYFIELD** in the amount of $25,000 and drawn on NOJO Capital One General Operating Acct. No. ***5472, into **MAYFIELD**'s JPMorgan Chase Acct. No. ***6036. |
| 13 | 11/09/12 | The deposit of check No. 2068, made payable to Villere Balanced Fund in the amount of $25,000 and drawn on **MAYFIELD**'s JPMorgan Chase Acct. No. ***6036, into **MAYFIELD**'s personal Villere investment Acct. No. ***1003. |
| 14 | 11/14/12 | The deposit of check No. 5055, made payable to **MAYFIELD** in the amount of $20,000 and drawn on NOJO Capital One General Operating Acct. No. ***5472, into **MAYFIELD**'s JPMorgan Chase Acct. No. ***6036. |
| 15 | 11/16/12 | The deposit of check No. 2205, made payable to Villere Balanced Fund in the amount of $20,000 and drawn on **MAYFIELD**'s JPMorgan Chase Acct. No. ***6036, into **MAYFIELD**'s personal Villere investment Acct. No. ***1003. |
| 16 | 12/04/12 | The deposit of Whitney cashier's check No. 11001532, made payable to Monette Corporation in the amount of $15,000 and purchased from YRI Whitney Acct. No. ***8576, into David G. Monette Corp. US Bank Acct. No. ***4333. |
| 17 | 12/05/12 | The deposit of Whitney cashier's check No. 11001552, made payable to NOJO in the amount of $77,000 and purchased from YRI Whitney Acct. No. ***8576, into NOJO Capital One General Operating Acct. No. ***5472. |
| 18 | 12/18/12 | The deposit of check No. 5039, made payable to **MAYFIELD** in the amount of $66,000 and drawn on NOJO Capital One General Operating Acct. No. ***5472, into **MAYFIELD**'s JPMorgan Chase Acct. No. ***6036. |
| 19 | 12/21/12 | The deposit of check No. 1186, made payable to NOJO in the amount of $30,000 and drawn on **MAYFIELD**'s JPMorgan Chase Acct. No. ***6036, into NOJO Capital One General Operating Acct. No. ***5472. |
| 20 | 01/31/13 | An online banking transfer in the amount of $37,000 from NOJO Capital One General Operating Acct. No. ***5472 to NOJO Capital One Payroll Acct. No. ***2489. |

| Count | Date | Monetary Transaction |
|-------|------|----------------------|
| 21 | 06/27/13 | An online banking transfer in the amount of $40,000 from NOJO Capital One General Operating Acct. No. ***5472 to NOJO Capital One Payroll Acct. No. ***2489. |
| 22 | 11/18/13 | A wire transfer in the amount of $20,000 from NOJO Capital One General Operating Acct. No. ***5472 to a bank account controlled by a booking company in Tampa, Florida for a performance in Chicago, Illinois. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT 23
### (Obstruction of Justice)

61.     On or about November 24, 2013, in the Eastern District of Louisiana, the

defendants, **IRVIN MAYFIELD** and **RONALD MARKHAM**, and others known to the Grand

Jury, did knowingly alter, conceal, cover up, falsify, and make false entries in records,

documents, and tangible objects, to wit: board of directors' meeting minutes of the NOPLF, with

the intent to impede, obstruct, and influence the investigation by the Federal Bureau of

Investigation into the matters described in Count 1 of this Superseding Indictment.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## NOTICE OF FRAUD FORFEITURE

62.     The allegations of Counts 1 through 8 of this Superseding Indictment are

realleged and incorporated by reference as though set forth fully herein for the purpose of

alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United

States Code, Sections 371, 1341, 1343 and 981(a)(1)(C), made applicable through Title 28,

United States Code, Section 2461(c).

63.     As a result of the offenses alleged in Counts 1 through 8, defendants, **IRVIN**

**MAYFIELD** and **RONALD MARKHAM**, shall forfeit to the United States pursuant to Title

18, United States Code, Section 981(a)(1)(C), made applicable through Title 28, United States

Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived

from proceeds traceable to violations of Title 18, United States Code, Sections 371, 1341 and

1343. The government specifically provides notice of its intent to seek a personal money

judgment against the defendants in the amount of the fraudulently-obtained proceeds.

64.    If any of the property subject to forfeiture, as a result of any act or omission of the

defendants:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third person;

        c.    has been placed beyond the jurisdiction of the Court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of said defendants up to the value of the above forfeitable

property.

All in violation of Title 18, United States Code, Sections 371, 1341, 1343 and

981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).

### NOTICE OF MONEY LAUNDERING FORFEITURE

65.    The allegations of Counts 9 through 22 of this Superseding Indictment are

realleged and incorporated by reference as though set forth fully herein for the purpose of

alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United

States Code, Section 982.

66.    As a result of the offenses, alleged in Counts 9 through 22, defendants, **IRVIN**

**MAYFIELD** and **RONALD MARKHAM**, shall forfeit to the United States all property real or

personal, involved in the aforesaid offenses and all property traceable to such property which

15

was involved in the said violations of Title 18, United States Code, Sections 1956(h), 1957 and 982. The government specifically provides notice of its intent to seek a personal money judgment against the defendants in the amount of the fraudulently-obtained proceeds.

67.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third person;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1) to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Section 982.

## NOTICE OF OBSTRUCTION OF JUSTICE FORFEITURE

68.     The allegations of Count 23 of this Superseding Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Sections 1519 and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).

69.     As a result of the offenses alleged in Count 23, defendants, **IRVIN MAYFIELD** and **RONALD MARKHAM**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), made applicable through Title 28, United States Code,

16

Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 1519. The government specifically provides notice of its intent to seek a personal money judgment against the defendants in the amount of the fraudulently-obtained proceeds.

70.     If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third person;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Section 1519 and 981(a)(1)(C), made

applicable through Title 28, United States Code, Section 2461(c).

A TRUE BILL:

FOREPERSON

DUANE A. EVANS
UNITED STATES ATTORNEY

G. DALL KAMMER
Assistant United States Attorney
Louisiana Bar Roll No. 26948

BRANDON LONG
Assistant United States Attorney

HAYDEN M. BROCKETT
Assistant United States Attorney

New Orleans, Louisiana
June 21, 2018

18

FORM OBD-34

No. _____ 17-241 "A"

## UNITED STATES DISTRICT COURT

| Eastern | District of | Louisiana |
|---|---|---|
| | Criminal | Division |

## THE UNITED STATES OF AMERICA

vs.

**IRVIN MAYFIELD**
**RONALD MARKHAM**

## SUPERSEDING INDICTMENT

SUPERSEDING INDICTMENT FOR CONSPIRACY TO
COMMIT MAIL AND WIRE FRAUD, WIRE FRAUD, MAIL
FRAUD, CONSPIRACY TO COMMIT MONEY
LAUNDERING, MONEY LAUNDERING, OBSTRUCTION
OF JUSTICE, AND NOTICE OF FORFEITURE

VIOLATIONS: 18 U.S.C. §§ 371, 1341, 1343, 1519,
1956(h), 1957, 2

A true bill.

_____
Foreperson.

Filed in open court this _____
_____ day of
_____ A.D. 2018.

_____
Clerk

Bail, $ _____

_____
G. Dall Kammer, Assistant United States Attorney