# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA               CRIMINAL ACTION

VERSUS                                 17-241

IRVIN MAYFIELD                      SECTION "A" (1)
RONALD MARKHAM

## <u>ORDER AND REASONS</u>

The following motions are before the Court:

**Motion to Dismiss Money Laundering Counts 9-22 (Rec. Doc. 126)** filed by defendant Ronald Markham.[1]

**Motion for a Bill of Particulars (Rec. Doc. 124)** filed by defendant Ronald Markham.

**Motion to Dismiss Counts 2-7 (18 U.S.C. § 1343—Wire Fraud) (Rec. Doc. 125)** filed by defendant Ronald Markham.

**Motion to Dismiss Counts 1, 9-18, 21 (Merger) (Rec. Doc. 127)** filed by defendant Ronald Markham.[2]

Defendant Ronald Markham has requested oral argument. (Rec. Doc. 128). The Court is not persuaded, however, that oral argument would be helpful in light of the issues presented.

For the reasons that follow, the motions are denied.

------------------------

[1] This motion has been adopted by codefendant Irvin Mayfield (Rec. Doc. 134).

[2] This motion has been adopted by codefendant Irvin Mayfield (Rec. Doc. 134).

## Background

On December 14, 2017, a grand jury in the Eastern District of Louisiana indicted Irvin Mayfield and Ronald Markham charging conspiracy to commit wire fraud, mail fraud, and money laundering, wire fraud, mail fraud, money laundering, and obstruction of justice. (CR17-241). As charged in the indictment, Mayfield founded New Orleans Jazz Orchestra ("NOJO") in 2002, and served as its Artistic Director. NOJO was composed of 18 musicians who routinely performed and toured, and it employed staff. (Rec. Doc. 78, Superseding Indictment ¶ 3). Both Mayfield and Markham received salaries from NOJO. Throughout NOJO's existence the organization relied heavily on donations and charitable grants to fund its operations. (*Id.* ¶ 5). In February 2011, a significant source of NOJO's funding was terminated. (*Id.* ¶ 6).

Mayfield also served as a board member and later chairman of the board of the New Orleans Public Library Foundation ("NOPLF"), a nonprofit that maintained a significant investment account. Markham also joined the board and succeeded Mayfield as chair. (*Id.* ¶¶ 8-11). The crux of the complaint is that when the funding for NOJO dried up, from August 2011 until about November 2013, Defendants transferred large sums of money from the NOPLF account and used it to fund NOJO and enrich themselves. (*Id.* ¶ 11). The indictment also charges Defendants with creating false and misleading business records in order to conceal their scheme from auditors, investment managers, and other NOPLF board members. A superseding indictment was returned on June 21, 2018. (Rec. Doc. 78). A second superseding indictment (the "SSI") was returned on December 6, 2018, (Rec. Doc. 113), and it constitutes the current charging document.

The criminal trial in this matter is scheduled to commence on April 29, 2019.

**Motion to Dismiss Money Laundering Counts 9-22 (Rec. Doc. 126)**

Defendants move to dismiss Count 9 (money laundering conspiracy) of the SSI and Counts 10-22 (money laundering) of the SSI arguing that the money laundering statute is unconstitutionally vague as applied to them. Defendants argue that the statute is vague as applied to them because it does not provide the defendant with adequate notice that his conduct is criminal.[3] Specifically, Defendants argue that the "derived from" element of the crime provides no limitation on how attenuated the property can be from the specified unlawful activity (in this case mail fraud and wire fraud) before the criminal "taint" is erased. In other words, how close must the connection be between the criminal activity and the property arguably derived from the activity before the statute is triggered? To demonstrate the attenuation problem in this case, Defendants point out that six substantive money laundering counts (10-15) have been charged based on the funds transfers described in Overt Act 42, and that the same money is involved at least

_____

[3] 18 U.S.C. § 1957(a) states: "Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is ***derived from*** specified unlawful activity, shall be punished as provided . . . ." (emphasis added). The elements of the crime of money laundering under this statute are: 1) property valued at more than $10,000 that was ***derived from*** a specified unlawful activity, 2) the defendant's engagement in a financial transaction with the property, and 3) the defendant's knowledge that the property was derived from unlawful activity. *United States v. Alaniz*, 726 F.3d 586,602 (5th Cir. 2013) (citing *United States v. Fuchs*, 467 F.3d 889, 907 (5th Cir. 2006)).

The elements of a conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) are: 1) an agreement between two or more persons to commit money laundering, and 2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose. *Alaniz*, 726 F.3d at 601 (quoting *Fuchs*, 467 F.3d at 906). The government need not prove an overt act in furtherance of the conspiracy. *Id.*

four times in monetary transactions. Defendants point out a similar issue with money laundering Counts 17-19, which concern the transfer detailed in Overt Act 46.

A criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or one that is so standardless that it invites arbitrary enforcement violates due process. *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)). The prohibition of vagueness in criminal statutes is "a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law." *Id.* (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

While the Court acknowledges that there could be circumstances in which a money laundering charge presents a vagueness problem due to attenuation, the Court is not persuaded that the transactions alleged in this case suffer from that problem. Simply put, the money laundering charges that target multiple transactions with the same funds are not so removed from the specified unlawful activity as to create a vagueness problem. As the Government points out, the transfers are not temporally distant from the criminal violations that are alleged to have generated the property, and there are at most three separate subsequent transfers involved. It follows then that as to any "attenuated" transaction, if the Government proves beyond a reasonable doubt that the defendant *knew* that the monetary transaction involved criminally derived property then per force there is no issue with notice. In a situation where the attenuation is so prevalent so as to arguably deprive the defendant of the knowledge that the funds involved in the transaction were derived from criminal activity, the Government would most likely be unable to meet its burden of proof as to knowledge, which is an essential

element of the crime of money laundering. In other words, in most cases the attenuation problem is dealt with by holding the Government to its burden of proof at trial.

In sum, Defendants' arguments are more theoretical and cast in the abstract than as applied to this case—this is particularly so before the Government has presented its case at trial. Defendants' motion to dismiss the money laundering counts is denied because the Court is not persuaded that the money laundering statute is impermissibly vague as applied in this case.[4]

## Motion for a Bill of Particulars (Rec. Doc. 124)

Markham moves the Court pursuant to Rule 7(f) to enter an order requiring the Government to respond to various requests for particulars.[5] The request for a bill of particulars generally concerns four areas: 1) the names of unindicted coconspirators known to the grand jury, 2) the date and content of certain statements allegedly made by Markham, 3) how Markham executed or caused certain "wires," i.e. monetary wire transfers, e-mails, or other monetary transactions to be committed, and 4) how Markham unlawfully enriched himself. Markham concedes that the Government has

---

[4] On a related note, in Markham's motion for a bill of particulars, he seeks clarification as to how he engaged in the monetary transactions alleged in money laundering Counts 13, 15, and 16, two of which seem to involve transactions in Mayfield's personal bank accounts. The questions that Markham are asking go to whether the Government can prove that Markham actually engaged in the financial transaction underlying each count, although the Court notes that Markham is charged with aiding and abetting as to those counts. While Markham's questions are reasonable, especially as to the transactions that seem to involve Mayfield's personal accounts, they actually seek to have the Government disclose its evidence prior to trial.

[5] Federal Rule of Criminal Procedure 7(f), entitled Bill of Particulars states: "Bill of Particulars. The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires."

produced voluminous discovery in this case—a situation that might otherwise obviate the need for a bill of particulars—but Markham's counsel explains that she has diligently attempted to locate answers to the items requested but could not find them in the documents produced thus far.

The Government's position is that the defense has been provided with broad discovery, including certain "hot" documents, and that Markham is intimately familiar with the facts and circumstances underlying the allegations. The Government posits that what Markham is really after is information regarding the Government's trial evidence and theory of the case—information that the defense is not entitled to obtain through a bill of particulars or otherwise.

The purpose of a bill of particulars is to obviate surprise at trial, enable the defendant to prepare his defense with full knowledge of the charges against him, and to enable double jeopardy to be pled in case of a subsequent prosecution. *United States v. Mackey*, 551 F.2d 967, 970 (5th Cir. 1977) (citing *United States v. Martinez*, 466 F.2d 679 (5th Cir. 1972)). It is well established that generalized discovery is not a permissible goal of a bill of particulars. *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978). The granting of a bill of particulars is addressed to the sound discretion of the trial court. *Mackey*, 551 F.2d at 970 (citing *Wong Tai v. United States*, 273 U.S. 77, 82 (1927)).

At the outset, the Court observes that the SSI is constitutionally sound insofar as it provides Markham with adequate notice of the offenses with which he is charged. *See United States v. Gaytan*, 74 F.3d 545, 552 (5th Cir. 1996). As the Court appreciates Markham's motion he does not contend otherwise. Rather, he requests the bill of particulars in order to avoid surprise at trial and to adequately prepare his defense.

As to the particulars related to the categories covering the date and content of certain statements allegedly made by Markham, and to how Markham executed or caused certain transactions to be executed, the Court is persuaded that those requests are akin to discovery requests, the crux of which is to discover what evidence the Government will rely upon to prove Markham's guilt as to the offenses alleged. Indeed, Markham's counsel has diligently pored over the discovery produced by the Government and seeks the bill of particulars where evidentiary support for certain allegations appears to be either lacking or not obvious.

As to the particulars seeking to discover how Markham unlawfully enriched himself in the alleged scheme, the Court is persuaded that the indictment adequately creates a nexus between NOJO's financial distress after its funding ceased in February 2011, and the salary payments that Markham received from NOJO during the time that funds were allegedly diverted from the NOPLF to NOJO. The Government's theory of the case as to Markham is clear from the indictment so the only remaining questions are evidentiary in nature, *i.e.*, how the Government will prove the nexus between the fraud and the salary payments.

Finally, the Government does not dispute that the defense is entitled to know the identity of the unindicted coconspirators *that the Government will use as witnesses at trial*. Rather, the Government disputes the timing of Markham's request. This case is governed by a scheduling order and the Government has agreed to provide its witness list to the defense one week before trial. (Rec. Doc. 138 at 4). Jencks Act and Giglio materials will be provided three weeks before trial. (*Id.* at 3). The Court is persuaded at

this juncture that these deadlines are sufficient to allow the defense to prepare for trial and eliminate prejudicial surprise at trial.

For the foregoing reasons, in addition to the fact that neither the crimes alleged nor the underlying scheme is complex, the Court declines to exercise its discretion to order a bill of particulars and therefore denies Markham's motion.

## Motion to Dismiss Counts 2-7 (18 U.S.C. § 1343—Wire Fraud) (Rec. Doc. 125)

Markham argues that Counts 2-7 of the SSI, which are substantive wire fraud counts, fail to adequately allege a crime because the salary payments from NOJO that Markham is alleged to have received are completely divorced from the scheme to defraud as alleged in the indictment. Markham analogizes his situation to that of the defendant in *United States v. Ratcliff*, 488 F.3d 639 (5th Cir. 2007). In *Ratcliff*, the defendant had been charged with mail fraud related to allegedly fraudulent campaign finance practices. Ratcliff won re-election as parish president and the government took the position that the salary and benefits that he received for that job constituted money or property for purposes of the mail fraud charges. The Fifth Circuit rejected that theory because the parish would have had to pay the salary and benefits to whomever won the election. *Id.* at 645. Therefore, the parish was not deprived of any property by means of the alleged fraud. *Id.*

Markham is not similarly situated to the defendant in *Ratcliff* because NOJO, the entity that paid Markham's salary, is not the victim in this case—NOPLF is the victim that allegedly was deprived of its property due to fraud by Mayfield and Markham. Unlike the parish in *Ratcliff*, NOPLF was not going to use its own money to fund salary payments for NOJO employees in the absence of fraud.

Markham points out that he received his salary from NOJO both before the allegedly fraudulent transfers began and long after they ended. But the salary payments received before NOJO lost its funding are not elucidating because the Government's theory is that Mayfield and Markham began to take money from NOPLF at some point after February 2011, specifically beginning on August 23, 2011. (SSI at 5, Overt Act 22). Markham may very well have continued to receive a salary from NOJO even after the transfers from NOPLF stopped, but that does not foreclose the possibility that at times money fraudulently taken from NOPLF was used to cover NOJO's operating expenses including the payment of a salary to Markham.

The Court agrees with the Government's contention that suggestions about what the Government can and cannot prove at trial are premature and are not a basis to dismiss charges before trial. The motion to dismiss Counts 2-7 is denied.

**Motion to Dismiss Counts 1, 9-18, 21 (Merger) (Rec. Doc. 127)**

Defendants move to dismiss Counts 9-18, and 21 of the SSI contending that the counts merge. Defendants argue that if the counts are allowed to stand, they will be convicted twice for what is essentially the same crime.

The concept of merger is implicated when a defendant is convicted under two criminal statutes for what is actually a single crime. *United States v. Kennedy*, 707 F.3d 558, 563 (5th Cir. 2013). For instance, merger is implicated when the defendant is convicted under the money laundering statute for essentially the same conduct that constitutes the conduct of the "unlawful activity" upon which the money laundering count is premised. *Id.* (citing *United States v. Lineberry*, 702 F.3d 210, 215 (5th Cir. 2012)). In this sense, merger is comparable to double jeopardy. *Id.* (citing *United States v. Santos*,

553 U.S. 507, 527 (2008)). To address merger in the money laundering context, the

court asks whether the money laundering crime is based on the same or continuing

conduct of the underlying predicate crime, or whether the crimes are separate and

based upon separate conduct. *Id.* at 565. Under this reasoning, the defendant may

prove merger by showing that the underlying unlawful activity was not complete at the

time that the money laundering is alleged to have occurred.[6] *Id.* "The crime of money

laundering is targeted at the activities that generally follow the unlawful act in time."

*United States v. Harris*, 666 F.3d 905, 910 (5th Cir. 2012).

Defendants argue that the substantive money laundering crimes charged in

Counts 10-18 and 21 merge with the conspiracy charged in Count 1, which is a

conspiracy to commit mail and wire fraud. Defendants point out that the conduct

underlying these substantive money laundering counts also forms the basis of several

of the overt acts alleged in support of the Count 1 conspiracy. Because the conspiracy

alleged in Count 1 ranges in time from August 2011 through November 2017,

Defendants argue that the crime that allegedly created the proceeds underlying the

money laundering counts was not "complete" on the dates that the banking transactions

allegedly occurred. Defendants contend that because the transactions alleged in

substantive Counts 10-18 and 21 are also acts in furtherance of the conspiracy alleged

---

[6] There is a second theory under which a defendant can prove merger: A defendant may show the transaction upon which the money laundering count is based was not a payment from profits of the underlying crime made in support of new crimes but instead was a payment from gross receipts of the previously committed crime made to cover the costs of that same crime. *Kennedy*, 707 F.3d at 565 (citing *Harris*, 666 F.3d at 910; *United States v. Brown*, 553 F.3d 768, 785 (5th Cir. 2008)). As the Government points out, this aspect of merger is not at issue in this case. (Rec. Doc. 143, Opposition at 10 n.2). Defendants do not suggest otherwise.

in Count 1, they cannot be the proceeds of that conspiracy. Therefore, the money laundering counts must be dismissed because they merge with Count 1.

The money laundering counts do not merge with the Count 1 conspiracy simply because they are also alleged as overt acts. An overt act is an act performed to effect the object of a conspiracy but it remains separate and distinct from the conspiracy itself. *United States v. Pomranz*, 43 F.3d 156, 160 (5th Cir. 1995). An overt act alleged in furtherance of a conspiracy need not constitute a criminal offense but if the act constitutes a substantive crime then the defendant may be prosecuted for both the conspiracy offense and the substantive crime as separate crimes. *Id.* (citing *Iannelli v. United States*, 420 U.S. 770, 777 (1975)). No merger issue arises based on the overlap between the money laundering counts and the Count 1 overt acts.

Moreover, the criminal activity that underlies the substantive money laundering counts is not conspiracy to commit mail or wire fraud, which is the crime charged in Count 1, but rather the actual substantive offenses of wire fraud and mail fraud. For any given charge of money laundering the Government must prove that the transaction involved the proceeds from either a completed crime of wire fraud or mail fraud. These crimes are "completed" when the elements that make up the crime are satisfied, and neither crime requires that the defendant garner proceeds or profits that he can subsequently launder or transact with in violation of 18 U.S.C. § 1957.[7] Neither

---

[7] To prove wire fraud under 18 U.S.C. § 1343, the Government must prove: (1) a scheme to defraud, and (2) the use of, or causing the use of, wire communications in furtherance of the scheme. *United States v. Ingles*, 445 F.3d 830, 838 (5th Cir. 2006) (citing *United States v. Gray*, 96 F.3d 769, 773 (5th Cir.1996)). To prove mail fraud under 18 U.S.C. § 1341, the Government must prove: (1) a scheme to defraud, (2) which involves the use of the mails for the purpose of executing the scheme. *United States v. Ingles*, 445 F.3d 830, 835 (5th Cir. 2006) (citing *United States v. McClelland*, 868 F.2d 704, 706 (5th Cir.1989)). Proof of profits or proceeds is not an

substantive offense is rendered inchoate or not "complete" simply because it is alleged

to also be an overt act in support of an ongoing conspiracy. If Defendants were correct,

then the merger doctrine would serve to reward a defendant for continued participation

in an ongoing conspiracy because it would immunize him from violating the money

laundering statute simply because the underlying offense is alleged to also be an overt

act in furtherance of a conspiracy. In this case, the substantive money laundering

counts are not based on the same or continuing criminal conduct that constitutes the

underlying criminal offenses, *i.e.*, mail and wire fraud, so merger is not an issue.

Defendants also argue that the Count 1 conspiracy (to commit mail and wire

fraud) and the Count 9 conspiracy (to commit money laundering) are not conceptually or

temporally distinct, that the Count 1 conspiracy subsumes the Count 9 conspiracy.

Defendants point out that the conspiracies overlap in time because Count 1 is alleged to

have occurred from February 2011 until November 2017, and Count 9 is alleged to have

occurred from August 2011 until November 2013. Defendants argue that Count 1 was

not "complete" before Count 9 because it continued to run for another four years after

the money laundering conspiracy concluded. Defendants argue that the conspiracy

counts merge because a conviction on Count 1 guarantees a conviction on Count 9—

after all Count 1 *includes* the *use* of the allegedly fraudulently obtained money—

meaning that Defendants could be punished twice for the same crime.

The Court discerns no merger problem with the Count 1 and Count 9

conspiracies because even though they overlap in time, they are based on distinct

---

element either crime because even a completely ineffective scheme to defraud can constitute
mail or wire fraud. *See United States v. Hoffman*, 901 F.3d 523, 540 n.8 (5th Cir. 2018) (citing
*Durland v. United States*, 161 U.S. 306, 315 (1896)).

agreements to commit different substantive crimes that do not have identical elements.[8] While the allegations that flesh out Count 1 include the use of the ill-gotten funds, the elements of the crime charged in Count 1 do not include among them actual attainment of any funds or proof of how Defendants ultimately used the funds. If the jury credits the Government's theory of the case then a conviction on Count 1 will essentially guarantee a conviction on Count 9 but this is not the result of Defendants being convicted twice for the same conduct.

Moreover, the Count 9 money laundering conspiracy is an inchoate crime that does not require proof that the Defendants actually committed the substantive crime of money laundering. This conspiracy need not follow the Count 1 conspiracy in serial fashion in order to avoid a merger problem.

Defendants' motion to dismiss based on merger is denied.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss Money Laundering Counts 9-22 (Rec. Doc. 126)** filed by defendant Ronald Markham and joined by defendant Irvin Mayfield is **DENIED**;

---

[8] For the Count 1 conspiracy to commit wire fraud the Government must prove 1) an agreement between the coconspirators, 2) to commit the crime of wire fraud, and 3) an overt act committed by one of the conspirators in furtherance of that agreement. *Ingles*,445 F.3d at 838 (citing *United States v. Garza*, 429 F.3d 165, 168 (5th Cir.2005)). Additionally, the government must demonstrate that the defendant acted with the intent to defraud. *Id.*

Meanwhile, for the Count 9 conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), the Government must prove: 1) an agreement between two or more persons to commit money laundering, and 2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose. *Alaniz*, 726 F.3d at 601 (quoting *Fuchs*, 467 F.3d at 906). The government need not prove an overt act in furtherance of the conspiracy. *Id.*

The Count 1 conspiracy also includes mail fraud but for simplicity the Court refers only to wire fraud. The analysis does not change for mail fraud.

**IT IS FURTHER ORDERED** that the **Motion for a Bill of Particulars (Rec. Doc. 124)** filed by defendant Ronald Markham is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion to Dismiss Counts 2-7 (18 U.S.C. § 1343—Wire Fraud) (Rec. Doc. 125)** filed by defendant Ronald Markham is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion to Dismiss Counts 1, 9-18, 21 (Merger) (Rec. Doc. 127)** filed by defendant Ronald Markham and joined by defendant Irvin Mayfield is **DENIED**.

February 7, 2019

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE